# REPORTS OF CASES

ADJUDGED IN

# THE COURT OF APPEALS

OF THE

# DISTRICT OF COLUMBIA.

## FIDELITY STORAGE CORPORATION *v.* TRUSSED CONCRETE STEEL CO.

### MECHANICS' LIEN; NOTICE OF LIEN.

1. Where the interest of the owner of land, upon which it is sought to establish a mechanic's lien, is the only interest against which the lien can run, *quære,* whether the mention of his name in the caption of the notice of the lien required to be filed, is sufficient, under D. C. Code, sec. 1238 [31 Stat. at L. 1384, chap. 854], requiring the notice to specifically set forth, among other things, "the name of the party against whose interest a lien is claimed."

2. A compliance with statutory requirements relating to mechanics' liens is necessary in order to secure a valid and enforceable lien. (Following *James B. Lambie Co.* v. *Bigelow,* 34 App. D. C. 49.)

3. Where a mechanic's lien may run against any one of three distinct existing interests in land, a notice of lien in the caption of which the name of the owner is given, and in the body of which is not given "the name of the party against whose interest a lien is claimed," as required by D. C. Code, sec. 1238, but it is thereby merely

stated that the amount claimed is due for labor and materials furnished under a contract with a party who is named, the notice of lien is insufficient to create an enforceable lien.

No. 2057. Submitted February 8, 1910. Decided April 5, 1910.

HEARING on an appeal by the defendants from a decree of the Supreme Court of the District of Columbia in a suit to enforce a mechanic's lien. *Reversed.*

The COURT in the opinion stated the facts as follows:

This cause comes here on appeal from a decree of the supreme court of the District of Columbia in equity in a suit brought by appellee, Trussed Concrete Steel Company, a corporation, complainant below, to enforce the payment of a mechanic's lien for steel furnished for the erection of a warehouse for the appellant Fidelity Storage Corporation under a contract with the appellant Karrick.

It appears that Karrick entered into a contract to erect a storage warehouse for the Fidelity Storage Corporation, in which the corporation agreed to pay him the sum of $155,000, and in which he agreed to have the warehouse completed and possession given before November 15, 1905, the contract providing that "a penalty of $25 per day will be exacted for each day's delay, beyond that period, as liquidated damages, for such delay." Karrick then entered into the following contract with the appellee company:

We will deliver F. O. B. cars Washington the necessary Kahn sheared bars required in the construction of the eight lofts and roof and footings as well as lintels over 1st story openings in front and one in side walls of the Karrick warehouse, sixty feet (60' 0") by two-hundred feet (200' 0") supported on two division walls twenty feet (20' 0") on centers, the beams being seven feet (7' 0") on centers, the floors designed for two hundred pounds (200) per sq. ft. live load, the

roof for forty pounds (40) per sq. ft. live load, for the sum of $15,500 the steel will be delivered as desired F. O. B. cars Washington, payments to be made for each shipment thirty (30) days net cash after arrival of material at Washington. We will also furnish free of charge general supervision and all drawings necessary to show construction. We will also furnish a working foreman to be in your employ, who will be under our instructions capable of constructing the reinforced concrete work. Provided you will use proper materials the construction which we design will be capable of sustaining the test loads required by the inspector of buildings, namely, three (3) times the live and one (1) time the dead load in addition to its own weight. Should the footing reinforcement be eliminated please deduct $500.

(Signed)    Trussed Concrete Steel Co.

Layton F. Smith, Mgr.

2–15–'05, Balto., Md.
To James L. Karrick, Washington, D. C.

Accepted subject to approval of W. L. T. Co. or whoever advances money in trust also approval of Building Inspector of Wash'g, D. C.

Feb. 15th, 1905.

(Signed)    James L. Karrick,

1333 G Street, N. W.

Appellee, in its bill in the court below, claimed a balance due it under this contract with Karrick of about $6,000, and prayed:

"2. That the defendant Washington Loan & Trust Company be required to discover what amounts it has paid on account of the aforesaid loan of seventy-five thousand (75,000) dollars, to whom said payments were made, and at what times they were made, and what sum or sums remain unpaid by it on account of said loan.

"3. That all accounts be taken under the direction of this

court as may be necessary, and, for this purpose, all necessary references be made to the auditor of this court.

"4. That a decree be passed requiring the payment to the complainant of the amount of its aforesaid lien by such one or more of the parties defendant as the court may determine should make such payment, and, in default thereof, that the aforesaid land and premises be sold for the purpose of enforcing complainant's aforesaid lien, and paying the amount so decreed to be paid to it, and appointing a trustee or trustees for the purpose of making such sale."

Albert A. Wilson and John B. Larner, trustees, and the Washington Loan & Trust Company were made defendants, for the reason that the company had taken a deed of trust on the property in question, in which Larner and Wilson were named as trustees. Their interest is not material to the determination of this appeal.

A separate answer was filed to the complaint by the defendant Karrick, in which he denies that the complainant in good faith carried out and performed its contract, and that he is indebted to complainant in any sum whatever. He then alleges that appellee company failed to carry out its contract to furnish the steel "as desired," and that, by reason of such failure, the completion of the building was delayed until after freezing weather set in, which forced him to incur a large additional expense in completing the building. The answer also contains the following allegation: "Further answering this paragraph this defendant says that, under the terms of the contract with his codefendant, Fidelity Storage Corporation, he has incurred a loss in his contract price for building said building for the corporation last aforesaid of twenty-five ($25) dollars for each of the seventy days during which he was delayed in his construction on account of the failure to deliver promptly the said steel work as agreed. And this defendant says that the delay aforesaid has entailed upon him a loss of more than five thousand ($5,000) dollars, which more than counterbalances the amount claimed by the said complainant to be due to it."

A separate answer was filed by the Fidelity Storage Corpora-

tion, alleging that it has no reason to doubt the truth of the facts set forth in the separate answer of its codefendant, Karrick, and alleging "that it has deducted from the compensation due the defendant Karrick under the contract pursuant to which he erected the building described in the bill of complaint, the sum of twenty-five ($25) dollars for each day's delay, during the period of seventy days mentioned by him in the 6th paragraph of his answer, and it says that the actual loss to it has been very much greater than that sum." It further alleges that "it admits that the complainant filed in the clerk's office of the District of Columbia a notice of its intention to hold a mechanic's lien upon the real estate described in the bill of complaint as therein alleged, but upon the advice of counsel it denies that such notice of lien is sufficient upon which to base the proceedings in this cause, for the reason that such notice does not specifically set forth 'the name of the party against whose interest a lien is claimed,' as required by the Code of laws applicable to the District of Columbia; and this defendant prays the same benefit from this defense as if it had specifically demurred to the bill of complaint on the ground last aforesaid."

Karrick was then permitted to file a cross bill, in which he made the Fidelity Storage Corporation, the Trussed Concrete Steel Company, Albert A. Wilson, and John B. Larner, trustees, and the Washington Loan & Trust Company defendants. In the cross bill he claims damages against the appellee company for loss incurred by reason of the alleged delay of appellee in furnishing the steel, as required under its contract, in the sum of $5,253.55. Karrick further alleges in his bill "that there is due to him from the said defendant Trussed Concrete Steel Company the sum of five thousand two hundred and fifty-three and fifty-five one-hundredths ($5,253.55) dollars, with interest from January 25, 1906, as indicated in the foregoing itemized statement, which he is willing to have set off against the claim of the said company as set forth in its bill of complaint."

The defendant Fidelity Storage Corporation answered: "That during the period from November 15, 1905, to January 24, 1906, it was unable to derive any revenue from said build-'

ing, although had the said building been under roof on the 15th day of November, 1905, it would then have been able to have rented rooms therein for storage purposes and to commence to derive a revenue therefrom; that the actual loss to this defendant by reason of said delay was greater than the sum of twenty-five ($25) dollars per day, but inasmuch as the sum of twenty-five ($25) dollars per day had been agreed upon between said Karrick and this defendant as liquidated damages, that sum, amounting to seventeen hundred and fifty ($1,750) dollars in all, is all that has been deducted by it from the contract price due said Karrick."

Appellee company answered the cross bill, specifically denying that it was indebted to Karrick in any amount, and alleging as follows: "Further answering said cross bill, this defendant alleges that the cause or causes of action set up therein are purely legal causes of action, being unliquidated demands for damages, and that as such said Karrick has no standing in a court of equity in such a suit as this one is, to maintain such a claim. This defendant claims the same advantage of these allegations as if it had demurred to said cross bill." Karrick, as complainant in the cross bill, replied, joining issue thereon.

Subsequently, Karrick amended his cross bill by adding certain items of damage, caused by the delay of appellee in delivering the material "as desired," to the amount of $2,196.20, making the total amount of damage claimed $7,449.75.

The Fidelity Storage Corporation answered the amended cross bill, admitting the truth of the allegations contained therein. Appellee answered, denying that it caused any delay in the construction of said building, but alleges that, if any delay occurred, it was occasioned by reason of the fact that Karrick "employed and used much second-hand and cheap material and cheap incompetent labor, which resulted in repeated delays in the construction of the building operation in question, and which also resulted in such defective work and material as may have been done upon or put in said building, and the defective conditions, work, and material in said build-

ing,   *   *   *   if any such existed or do exist, were and are
due exclusively to causes for which this defendant is in no
degree liable or responsible." Karrick again replied, joining
issue with the defendant to the cross bill.

The cause was heard in the court below upon the pleadings
and the evidence under both the original bill of appellee and
the cross bill of Karrick. A decree was entered dismissing
the cross bill, and giving judgment in favor of appellee in the
sum of $4,309.55, with interest and costs, against the Fidelity
Storage Corporation and the Fidelity & Deposit Company of
Maryland, its surety on an undertaking given to release the
property from the operation of the mechanic's lien.

From this decree the cause comes here on appeal.

*Mr. Walter C. Clephane* for the appellant Karrick, and *Mr.
Alan Clephane* for the other appellants.

*Mr. J. H. Ralston* and *Mr. F. L. Siddons* and *Mr. W. E.
Richardson* for the appellee.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

At the outset we are confronted with an important legal
proposition, which, we think, is sufficient to dispose of this
cause. Was the notice of mechanic's lien in compliance with
the requirements of the statute? The notice reads as fol-
lows:

Supreme Court, District of Columbia.
No. 5379.
Trussed Concrete Steel Company, Claimant, a Corporation,
vs.
Fidelity Storage Corporation, Owner, a Corporation.
Notice of Lien.
Notice is hereby given that we intend to hold a mechanic's
lien upon all that piece or parcel of land known and described
as and being all of original lot numbered eighteen (18) and

the east thirty (30) feet one and one-half (1½) inches front on U street north by the full depth thereof, of original lot numbered seventeen (17) in square numbered two hundred and five (205), situate in the city of Washington, in the District of Columbia, and the buildings thereon, for the sum of forty-four hundred and fifty-seven and 84/100 (4457.84) dollars, with interest on sixteen hundred and forty-three and 88/100 (1643.88) dollars from November 2, 1905; on sixteen hundred and forty-four and 36/100 (1644.36) dollars from November 16, 1905; and on eleven hundred and fifty-nine and 60/100 (1159.60) dollars from November 24, 1905, until paid, being amount due to claimant for labor upon and materials (steel and labor) furnished for the construction of said building under and by virtue of a contract with James L. Karrick.

(Signed)          Trussed Concrete Steel Company,
                (By Ralston and Siddons, Its Attorneys),
                                              Claimant.

The statute in force in this District, authorizing the filing of a notice of mechanic's lien, is sec. 1238 of the Code of the District of Columbia [31 Stat. at L. 1384, chap. 854], which is as follows:

"Sec. 1238. Notice.—Any such contractor wishing to avail himself of the provision aforesaid, whether his claim be due or not, shall file in the office of the clerk of the supreme court of the District during the construction, or within three months after the completion, of such building, improvement, repairs, or addition, or the placing therein or in connection therewith of any engine, machinery, or other thing so as to become a fixture, a notice of his intention to hold a lien on the property hereby declared liable to such lien, for the amount due or to become due to him, specifically setting forth the amount claimed, the name of the party against whose interest a lien is claimed, and a description of the property to be charged, and the said clerk shall file said notice, and record the same in a book to be kept for the purpose."

It is insisted that the notice is fatally defective in that it does not contain "the name of the party against whose interest a lien is claimed." It is apparent that, under the statute, three essential averments are necessary to constitute a valid notice. These are, first, the amount claimed; second, the name of the party against whose interest the lien is claimed; and, third, a description of the property to be charged.

A mechanic's lien had no existence at common law. Hence, in our country, it is purely a creature of statute. It is founded in equity and commercial necessity. It exists in favor of those who furnish labor and materials for the erection of a building. The landowner appropriates and uses the mechanic's labor and furnisher's materials, and a lien is given against the property into which the labor and material have gone, to secure priority of payment of the price of the same. The performance of the work, or the furnishing of the materials, gives merely a right to acquire a lien. The statute prescribes the steps necessary to perfect it. These requirements relate to the remedy, rather than the right. Hence, it has been held by the great weight of authority that a substantial compliance with the terms of such a statute is sufficient. Inasmuch as the statute creates a right in derogation of the common law, it follows that, in determining whether a right to a lien exists, the statute should be strictly construed against one claiming such right. But the statute also affords a remedy, and where the right to a lien clearly appears, and the sole question to be determined is whether the claimant has proceeded properly to acquire and establish his lien, the statute should be liberally construed in his favor.

Notwithstanding these rules of construction, we think it is essential, in order to acquire a valid lien, that there should be a compliance with all the material requirements of the statute. The act of Congress of July 2, 1884 (23 Stat. at L. 64, chap. 143), formerly in force in this District, required that the notice of lien should only set forth a description of the property and the amount claimed. It could not be contended that, under this statute, a valid lien could have been established where

one of these essential allegations was omitted. With the enactment of the Code, an additional requirement was inserted in the statute, to the effect that the notice should also state "the name of the party against whose interest a lien is claimed." It will be observed that this does not require, as in the statutes of some of the states, that the notice shall, in all cases, state the name of the owner of the property. It is only required here when the lien is claimed against his interest. If the interest of the owner was the only one against which the lien could run, the mention of his name in the caption might be held sufficient, but even this, as we shall have occasion to observe later, is very doubtful. But where the lien may run against any one of three distinct interests, and the statute requires the party whose interest is assailed to be named in the notice, certainly the mere naming of the owner in the caption, without reference in the body of the notice to whose interest is sought to be held under the lien, would be insufficient even to hold the owner.

On the other hand, it cannot be ascertained from the bill in this case whose interest it is intended to hold under this lien. The several defendants named therein are sued jointly, and a decree is prayed against any or all of them, with the appointment of trustees to sell the property to satisfy the lien. While we do not think this is material as affecting the validity of the notice as a warning to the public of the particular interest sought to be held for this alleged indebtedness, yet it is interesting to note that, even by the terms of the bill, the owner of the property is not the exclusive party against whose interest the lien is claimed.

In many of the states, the statutes authorizing the filing of mechanics' liens require that the notice shall give the name of the owner or reputed owner of the premises upon which the lien is claimed. It has been held that, where a statute contains this provision, a compliance with the requirement is essential to the existence of the lien, and, in such cases, the averment of ownership must appear in the body of the notice as an integral part or portion of the declaration of right, and it is

not sufficient that the name of the owner shall appear in the caption of the notice. *Spragg Invest. Co.* v. *Mouat Lumber & Invest. Co.* 14 Colo. App. 107, 60 Pac. 179; *Reindollar* v. *Flickinger,* 59 Md. 469; *McElwee* v. *Sandford,* 53 How. Pr. 89.

In the case of *White* v. *Mulline,* 3 Idaho, 434, 31 Pac. 801, where the statute provided that the name of the owner or reputed owner should appear in the notice, a notice was filed without stating the name of the owner in the body thereof, but in the caption it was stated to be filed against "R. J. Bledsoe, Contractor, and B. G. Mullins, Owner." The court said: "Under a statute almost identical with that of Idaho, the supreme court of Nevada, in *Malter* v. *Falcon Min. Co.* 18 Nev. 209, 2 Pac. 50, held that, while the statute should be liberally construed, every material requirement should be complied with, and that, where a direct and unequivocal allegation of the name of the owner is wanting in the notice of the lien, such notice is radically defective, and no lien can be founded thereon. It can hardly be claimed that the *descriptio personæ* at the head 'of the notice, to wit, 'White and Mallison, Subcontractors and Plaintiffs, v. R. J. Bledsoe, Contractor, and B. G. Mullins, Owner,' is a direct and unequivocal allegation of the name of the owner."

In *Hoffman* v. *Walton,* 36 Mo. 619, where the court was considering a statute requiring that the notice should contain the names of both the owner and the principal contractor, it was said: "Now, the law under consideration requires that the statement filed shall include a true account, with all just credits given; a description of the property, so that it can be identified, with the name of the owner or contractor, or both if known; and that it shall be verified by affidavit. These all constitute the elements essential to securing the lien. We cannot say that one of the constituent parts is more matter of substance than another. The language seems plain and unambiguous, and we are not permitted to impair its force or fritter away its meaning by construction."

The requirement that the party against whose interest a lien

is claimed shall be named in the notice is a material requirement of the statute. The reason for this declaration in the notice can be easily gleaned from the context. Sec. 1237 of the Code [31 Stat. at L. 1384, chap. 854] permits a lien to be asserted against a lessee for a term of years or a vendee in possession under a contract of sale. Thus a lien may be filed against the interest of a person having a less estate in the property than the owner. Since the Code provides for a sale of the interests of persons other than the owner, it becomes imperative that the party should be named in the notice against whom the lien is claimed. The reason for placing this requirement in the statute becomes quite apparent when considered in connection with the context.

The notice in the present case contained the requirements of a notice under the act of 1884, and no more. To hold it sufficient under the present statute would be to declare that these sections of the Code add nothing to the former act, and that Congress, in enacting the present statute, did a vain thing. Inasmuch as this notice is filed for the benefit of the public, it becomes highly important that it should, on its face, clearly state the interest sought to be held under the lien. The notice of lien in this case states that the amount claimed is due for labor and materials furnished "under and by virtue of a contract with James L. Karrick." It might well be inferred, from the notice, that Karrick was "the party against whose interest a lien is claimed."

The rule is well settled that a compliance with the statutory requirements is necessary in order to secure a valid and enforceable lien. This court in a very recent case (*James B. Lambie Co.* v. *Bigelow,* October term, 1909, ante, 49), in construing the sections of the Code relating to mechanics' liens, speaking through Mr. Justice Robb, said: "A mechanic's lien has no existence outside the statute creating it. It was not recognized at common law, nor was it allowed in equity. It is founded upon the just and natural consideration that a party who has enhanced the value of property by contributing thereto labor and materials shall be entitled to a preferred claim on such

property to the extent of his contribution. While the statute creating such a lien is to be reasonably construed so as to effectuate, if possible, the legislative intent, we are not at liberty to excuse those who would claim its protection from the performance of precedent conditions. As was said by Mr. Justice Field in *Davis* v. *Alvord,* 94 U. S. 549, 24 L. ed. 285: 'Whilst the statute giving liens to mechanics and laborers for their work and labor is to be liberally construed, so as to afford the security intended, it cannot be too strongly impressed upon them, that they must not only bring themselves by their notices, as was done in this case, clearly within the provisions of the statute, but they must be prepared, if the priority of their liens be disputed, to show a compliance with those provisions, and to fix, with certainty, the commencement and completion of their work.' "

In Maryland, the statute required the party claiming a lien to make a duplicate copy of the bill of particulars under oath, one to be delivered to the clerk of the county court, to be filed and recorded, and the other copy to be furnished to the party owing the debt. The statute further specifically provided that, "when such an amount is filed and recorded, it shall be deemed sufficient diligence to secure the lien herein provided." Notwithstanding this express provision as to the filing and recording being sufficient to secure the lien, the court, in holding that a failure to furnish the debtor with a copy of the bill of particulars was fatal, said: "The acts required to fix and secure the lien under the statute are in the nature of an *ex parte* proceeding to fix and fasten a lien upon a man's property, not created by express contract, and therefore every requisite of the statute must be at least substantially complied with, and a failure to thus comply upon the part of the lien holder is fatal to the same. It follows from this construction of the act, that the party who asserts the lien must, before he is entitled to a foreclosure of the same, show by competent evidence a compliance with the statute in recording the bill of particulars, and delivering a copy thereof to his debtor." *Lee* v. *Phelps,* 54 Tex. 367.

In the present case there has been such a total failure to comply with the express requirements of the statute that the notice must be held insufficient to create an enforceable lien. The decree of the court below is reversed, with costs, and the court is instructed to enter a decree dismissing the bill.

*Reversed.*