The AETNA CASUALTY AND SURETY COMPANY, Appellant,

v.

CIRCLE EQUIPMENT COMPANY et al., Appellees.

No. 20290.

United States Court of Appeals District of Columbia Circuit.

Argued Feb. 17, 1967.

Decided April 3, 1967.

Mr. Alexander M. Heron, Washington, D. C., with whom Mr. Edgar T. Bellinger, Washington, D. C., was on the brief, for appellant.

Mr. Sherman L. Cohn, Washington, D. C., with whom Mr. Francis J. Kelly, Washington, D. C., was on the brief for appellees.

Before BAZELON, Chief Judge, and MC-GOWAN and LEVENTHAL, Circuit Judges.

McGOWAN, Circuit Judge:

Appellees sued in the District Court to enforce the undertaking of appellant, as surety upon a statutory bond, to pay for services and materials supplied to a defaulting contractor. The District Court denied appellant's motion to dismiss for want of subject-matter jurisdiction; and it granted appellees' motion

for summary judgment. The propriety of each of these actions is challenged upon this appeal. We find those challenges unavailing in each instance, and affirm the judgment of the District Court.

I

■ The bond in suit was forthcoming under the requirements of 1 D.C. Code § 804 (1961). That statute is addressed to those who contract with the District of Columbia to perform work on public projects. Its primary purpose is to protect the District Government against defects or default in performance, but the bond exacted to this end is to include the "additional obligation" that laborers and materialmen are to be promptly paid. Any such unpaid creditors "shall have the right to intervene and be made a party to any action instituted by the District of Columbia on the bond of the contractor, and to have their rights and claims adjudicated in such action," subject always to the priority of the District and with pro rata distribution of what is left after that priority is observed. The statute goes on to provide that, if the District does not itself bring suit within six months after final settlement under the contract, then any unpaid creditors may bring suit in the District Court in the name of the District. Such latter suit must be brought within one year from final settlement; and other creditors must pursue their claims by intervening as parties.

Final settlement in this case occurred on December 26, 1963. On May 19, 1964 —not quite five months later—appellees brought suit upon the bond. In its answer to the complaint, filed June 17, 1964, appellant asserted as a separate defense the untimeliness of the suit in terms of prematurity. Some two years later, i. e., April 1, 1966, a pre-trial conference was held; and the pre-trial order recited a stipulation by counsel that, on or before April 18, 1966, appellees might move for summary judgment and appellant might move to dismiss the complaint. Such motions were made, with the results described above. The District of Columbia has at no time sued upon the bond.

II

The District Court orally stated its reasons for denying the motion to dismiss. It recognized that the suit was brought prematurely. It noted, however, that the one-year statute of limitations contained in the law giving rise to the action had run during the time while the case was at issue awaiting trial. The court felt that to dismiss the complaint under these circumstances would be, as it put it, "unconscionable." It held that appellant's failure to raise the jurisdictional defect by motion before answer estopped appellant from pressing it later.

In this court appellees exhibit some considerable unease about this foundation for their victory in the trial court. They purport to recognize that Rule 12 (b), FED.R.CIV.P., gave appellant an option to raise the asserted jurisdictional defect in the first instance either by answer or motion. Whether this concession is, at least upon the facts of this record, inescapably necessary in the light of appellant's eventual utilization of a Rule 12(b) motion, we need not decide,[1] since we think the District Court reached the right result, whether or not it be stated in terms of estoppel.

Our reading of the statute in relation to the facts of this record is that the

1. Rule 12(b) itself provides that a motion asserting lack of jurisdiction "shall be made before pleading if a further pleading is permitted," as it would have been here under Rule 12(a). Although this language presumably is addressed to the situation where a defendant elects to raise a jurisdictional defect by motion rather than by answer, it might have some implications for the case where, as here, the defendant does both *seriatim*, with the expiration of the limitations period coming in between. Appellant would urge, however, that appellees are hardly in a position to make this kind of an argument here since they stipulated at pre-trial that appellant could make a motion to dismiss.

jurisdictional defect created by appellees' suit within six months was conditional, not absolute. The court's power to hear and determine the claim was voidable, not void, to use another terminology of long lineage. Until the six months had elapsed, appellant could have had the suit dismissed by seeking such relief promptly. At the expiration of the six months period without action by the District of Columbia, the latent jurisdictional infirmity disappeared and, from that point forward, the suit would, at least at the instance of the defendant, no longer be vulnerable to the charge of prematurity.[2] It is clear that Congress intended to give the District of Columbia a clear and distinct preference in the matter of the initiation of suit. But its purposes in this regard were exhausted by the expiration of six months without the District's availing itself of this privilege. We have no reason to suppose that they survived longer, solely to the end of punishing a premature filing by loss of the entire claim.

Appellant argues simply that, if estoppel is put to one side, we are bound by higher authority. It founds this contention upon the so-called Heard Act, which was on the books from 1905 to 1935,[3] and which performed an office for the federal government similar to that provided for the District of Columbia by 1 D.C. Code § 804. Appellant accurately notes the parallels between the two statutes, and then confidently rests upon United States ex rel. Texas Portland Cement Co. v. McCord, 233 U.S. 157, 34 S.Ct. 550, 58 L.Ed. 893 (1914). There is no question but that the Supreme Court in that case construed the Heard Act in the way appellant urges the D.C. statute should be read; and the result of that construction there was that a creditor lost the entire security of the bond because he filed a suit before the end of the period in which the United States was given an exclusive precedence.

It is instructive, however, to see how the Court went about that construction. It first referred to the venerable principle that when a new right is created with conditions attached, the latter "become a part of the right conferred, and compliance with them is made essential to the assertion and benefit of the liability itself." The Court then professed itself to be satisfied that "[t]he purpose of Congress to give the United States the exclusive right to bring suit within six months is stated in terms too plain to be mistaken * * *." Therefore, said the Court, "it becomes unnecessary to inquire into the reasons which induced the legislation"; and the premature filing meant that there was no cause of action before the court to which its jurisdiction could attach. However "unnecessary" this seemingly essential inquiry may have been in an age still largely in thrall to the rigors of common law pleading, it appears differently in a light refracted by the supervening Federal Rules of Civil Procedure. See Foman v. Davis, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).

Whatever may be true of the Heard Act,[4] we do not think the application of

2. We intimate no opinion with respect to whether another creditor, who had itself faithfully observed the six months period, could successfully seek dismissal in favor of his own suit started after the preference period accorded the District of Columbia had expired. The scheme of the statute, which contemplates that all such claims are to be determined in one action, perhaps implies the contrary. However, there may be advantages to being the initial plaintiff which would warrant preferring the creditor who is the more scrupulous in his deference to the clear language of the statute. What those advantages might be is not illuminated by the record before us in which the issue does not arise.

3. 33 Stat. 811 (1905). The Heard Act was repealed on August 24, 1935 and replaced by the Miller Act, 49 Stat. 793–794, 40 U.S.C. §§ 270a, 270b (1964).

4. It is true that, as appellant forcefully points out, this court has recognized the similarities between the Heard Act and 1 D.C.Code § 804, and has on occasion looked to judicial contruction of the one for guidance in applying the latter. United States Cas. Co. v. District of

1 D.C.Code § 804 can be determined solely by identifying the Congressional purpose as that of giving a six-months preference to the District of Columbia in suing upon the bond. That was certainly *a* purpose. But it was surely incidental and ancillary to what were clearly the more fundamental purposes to protect *both* the District of Columbia and the private suppliers of services and materials against defaulting contractors on public projects. Those legislative objectives are certainly not forwarded by depriving the creditor of his entire right if he, under circumstances which entail no injury to the public as personified by the District of Columbia, brings suit before the six months have ended. If it seems important enough to the defendant, he can seek to have that suit terminated, in which event the creditor will be penalized by the costs he must pay and the expense he must incur in filing a new suit. We cannot infer that Congress intended to inflict anything more heroic.

 This is not to say that the legislative scheme *may, without adverse consequence of any kind, be invariably ignored.* But there is no suggestion that appellees acted in deliberate defiance of the statute. Good-faith uncertainties as to the precise date from which the six months are to be counted can account for prematurity of the order of that involved here. In any event, we are not persuaded that the statute must be applied in such a way as to oust the District Court of power to entertain this suit. The concept of subject-matter jurisdiction is not single in nature, and the answers to its manifold invocations are not automatic. The one we give here is the one which most comports, in our view, with the policy goals sought to be achieved by the statute.

### III

Appellant argues that summary judgment was erroneously granted because there was an undetermined issue of material fact. This point purports to derive from the statutory characterization of labor or materials as "used in the construction or repair of any public building or public work * * *." Although the pre-trial statement does not indicate that appellant had any purpose to defend on this ground, appellant's opposition to the motion for summary judgment, in the paragraph quoted in the margin,[5] sought to put appellees to their proof that the

Columbia, 71 U.S.App.D.C. 92, 107 F.2d 652 (1939). But the issue in that case was the timeliness of a suit filed *after* the six months, and it turned upon the question of what was the date of final settlement. It was for instruction on this latter question that this court turned to Heard Act authorities, and all else was *dicta* which we do not choose to follow.

5. 2. Defendant The Aetna Casualty & Surety Company was surety on a District of Columbia highway repair contract for the contractor L. & L. Construction Co., Inc. and as such acquired no personal information or knowledge as to whether or not the materials furnished and the equipment rented were all actually employed in the work called for by contract No. 19234. Defendant is aware that materials furnished by others under another District of Columbia highway contract were not all used on that contract but were employed on any number of jobs being then conducted by L. & L. Construction Co., Inc. The essential facts in this respect have not as yet been demonstrated to exist. In the complaint, each appellee alleged that it contracted with the construction company, in the one case, "for equipment rental and service in connection with work on Contract No. 19234"; and, in the other, "for supplying paving materials on Contract No. 19234." In the former case, this was followed by the allegation that "the equipment and service were accepted"; and, in the other, by the allegation that "the materials were accepted and used." In the answer, appellant represented that it was without knowledge or information sufficient to form a belief as to the truth of these allegations. Appellees' motion for summary judgment was accompanied by two affidavits: One asserted that the contractor was indebted to one appellee in a certain sum "for paving materials delivered to L & L Construction Company on D.C. Contract #19234," and the other made a similar allegation of indebtedness "for equipment rented to L and L Construction Company, Inc., on D.C Contract 19234. * * *"

services and materials "were all actually employed in the work called for" by the contract in respect of which the bond was given, rather than on some other project of the general contractor.

■ We think that a fair reading of the statute, in the light of its underlying purpose, does not require the proof demanded by appellant. 1 D.C.Code § 804 gives a right of recovery to any person "who has furnished labor or materials used in the construction or repair of any public building or public work." We construe that language, for purposes of recovery upon the bond in suit, to require only a showing that materials or equipment have, by reference to the public contract, been furnished by the subcontractor to the general contractor and have been accepted by the general contractor for use in that contract.[6] Any other construction would be at odds with the purpose of the statute—to protect those who supply labor or materials for public contracts—and with the practical realities of the construction industry. Humphreys & Harding, Inc. v. District of Columbia ex rel. The Joslyn Co., 110 U.S.

App.D.C. 311, 314, 293 F.2d 150, 153 (1961).[7]

■ In supplying goods to the general contractor, the subcontractor relies on knowledge that the general contractor has been required to post a bond, since government work is involved in the contract. If the material or equipment is, after delivery and acceptance, diverted by the general contractor to another use, the subcontractor is entitled to look for protection to the surety who guaranteed the performance of the general contractor. The surety cannot expect the subcontractor always to be in a position to prove that all the material and equipment supplied by him were used by the general contractor in the particular project protected by the bond.[8] We think it is sufficient, under the terms of the statute, for the subcontractor to show, as he did here, that the material and equipment were furnished by him with reference to the public contract and were accepted by the general contractor for use in its fulfillment. The judgment appealed from is

*Affirmed.*

6. We need not consider whether a different result might be required under a law like that providing a mechanics' lien against property, which has been traditionally construed narrowly in light of its limited purpose "to protect by the property those who contribute to its value by labor or materials * * *." Chamberlin Metal Weather Strip v. Karrick, 60 App.D.C. 316, 317, 53 F.2d 928, 929 (1931).

7. The similar provision in the federal statute, 40 U.S.C. § 270a, 270b (1964), has generally been contrued as not requiring actual use in the contract work as a condition of recovery. See, *e. g.*, United States for the Use of Koppers Co. v. Five Boro Constr. Corp., 310 F.2d 701, 703 (4th Cir. 1962); United States for the Use and Benefit of J. P. Byrne & Co. v. Fire Ass'n of Philadelphia, 260 F. 2d 541, 544–545 (2d Cir. 1958); *but see* United States for the Use and Benefit of Westinghouse Elec. Supply Co. v. Robbins, 125 F.Supp. 25, 27 (D.Mass.1954) (dictum). See also the opinion of Mr. Justice Brandeis in Brogan v. National

Sur. Co., 246 U.S. 257, 261 (1918) 38 S.Ct. 250, 251, 62 L.Ed. 703 ("This court has repeatedly refused to limit the application of the act to labor and materials directly incorporated into the public work").

8. The Second Circuit has stressed the commercial realities of his holding:

[T]he statutory bond is of value to materialmen in our credit economy only as its coverage is predictable at the time the contract for the materials is created. Businessmen look to more than the contents of their cash registers in conducting their affairs. If, because the surety's liability is held suspended until the goods are consumed, the bond has little effect on the degree of certainty with which the supplier can expect to receive the purchase price of the materials sold or to be sold under the contract, it little aids the financial position of the persons Congress sought to benefit.

United States for the Use and Benefit of J. P. Byrne & Co. v. Fire Ass'n of Philadelphia, 260 F.2d 541, 545 (2d Cir. 1958).