UNITED STATES of America, For the Use and Benefit of Capitol Electric Supply Co., Inc., Plaintiff, Appellant,

v.

C. J. ELECTRICAL CONTRACTORS, INC., et al., Defendants, Appellees.

UNITED STATES of America, For the Use and Benefit of Capitol Electric Supply Co., Inc., Plaintiff, Appellee,

v.

C. J. ELECTRICAL CONTRACTORS, INC., et al., Defendants, Appellants.

Nos. 75–1123, 75–1124.

United States Court of Appeals,
First Circuit.

Argued Jan. 8, 1976.
Decided May 13, 1976.

Edward L. Schwartz, Boston, Mass., with whom Lewis A. Sassoon, Boston, Mass., was on brief, for United States of America for the Use and Benefit of Capitol Electric Supply Co., Inc.

Joseph H. Killion, Boston, Mass., with whom MacPhee, Downey & Killion, Boston, Mass, was on brief, for C. J. Electrical Contractors, Inc., et al.

Jack R. Pirozzolo, Boston, Mass., with whom Willcox, Pirozzolo & McCarthy, Boston, Mass., was on brief, for Usen Associates, Inc. and Keene Corp., Inc.

John M. Reed, Boston, Mass., with whom Philip M. Cronin, Robert P. Baker, and Withington, Cross, Park & Groden, Boston, Mass, were on brief, for Travelers Indem. Co.

Before COFFIN, Chief Judge, McENTEE and CAMPBELL, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

This Miller Act case involves a government contract for the furnishing and installation of lighting fixtures in a Department of Transportation parking lot. The government awarded the contract to the defendant C. J. Electrical Contractors, Inc. (C.J.), and C.J. in turn contracted with the plaintiff, Capitol Electric Supply Co. (Capitol), to obtain the fixtures. The fixtures supplied initially by Capitol included floodlights that did not conform to the government specifications, but C.J., without notifying Capitol, arranged with the manufacturer to exchange these for conforming floodlights at no extra cost. C.J. then installed the fixtures in the parking lot, received what it was due under the government contract, but failed to pay Capitol. This action was then brought by Capitol.

The Miller Act requires government contractors to provide a "payment bond" for the protection of subcontractors and materialmen. 40 U.S.C. § 270a(a). The bond that C.J. provided was in the amount of $12,500 (one-half of the amount payable under the government contract), with the defendant Travelers Indemnity Co. as surety. Capitol's complaint invoked the Miller Act and sought judgment against both C.J. and Travelers. As various other claims, cross-claims, and counter-claims proliferated, the district court referred the case to a magistrate sitting as a special master under Fed.R.Civ.P. 53. The magistrate ruled for Capitol on its Miller Act claims, granted Travelers' claim to indemnification from C.J., and dismissed all other claims. The district court, however, after hearing objections to the magistrate's report, reversed the finding of Miller Act liability, finding that Capitol had filed suit prematurely and

was now time-barred from filing anew. The court nonetheless retained pendent jurisdiction over Capitol's underlying contract claim and confirmed the magistrate to the limited extent of allowing Capitol to recover from C.J. itself for the fixtures that were ultimately supplied. All other claims were dismissed.[1]

There is no dispute that C.J. agreed to pay Capitol for lighting fixtures, that Capitol in turn paid Stonco to furnish the fixtures C.J. wanted, that Stonco eventually supplied fixtures acceptable to all, and that C.J. has not yet paid Capitol. We need go no further to uphold the district court's findings that C.J. was liable on its contract with Capitol for the adjusted price of the fixtures.[2] The question remains whether Capitol may alternatively recover against Travelers on the payment bond that C.J. provided under the Miller Act. The Act gives a right to sue and to recover on such a bond to:

> "[e]very person who has furnished labor or material in the prosecution of the work provided for in such contract, in respect of which a payment bond is furnished under section 270a of this title and who has not been paid in full therefor before the expiration of a period of ninety days after the day on which the last of the labor was done or performed by him or material was furnished or supplied by him for which such claim is made. . . ."

40 U.S.C. § 270b(a). The act also provides that "no such suit shall be commenced after the expiration of one year after the day on which the last of the labor was performed or material supplied by [the person suing]. . . ." Id. § 270b(b). We think the district court read these provisions too restrictively in denying any recovery to Capitol under the Miller Act. Whether or not Capitol's suit was instituted within the

---

1. With the exception of Travelers' cross-claim for indemnification, see infra, the record shows all of these claims to be without merit, and we affirm without discussion their dismissal by the district court.

2. From the agreed price the district court deducted $350, an amount the government had charged C.J. for correcting certain defects. The finding that C.J. suffered no damage chargeable to Capitol from the delay in supplying conforming fixtures finds adequate support in the record.

ninety-day waiting period, the circumstances require that Capitol now be given an opportunity to bring its action into compliance with § 270b(a) by filing a supplemental pleading, and we remand for that purpose.

The chronology of events is as follows:

*November 2–5, 1971:* The Government awarded to C.J. the contract for installation of lighting fixtures, specifying floodlights manufactured by Stonco Electric Products Co. as Catalog No. GD 8902.

*November 5, 1971:* C.J. ordered lighting fixtures from Capitol.

*January 20, 1972:* Floodlights manufactured by Stonco as Catalog No. CTC 1510 were delivered.

*June 30, 1972:* The other components of C.J.'s order from Capitol (allegedly) were delivered.

*July 13, 1972:* Without notifying Capitol, C.J. arranged with Stonco for substitution of the GD 8902 floodlights.

*August 11, 1972:* The GD 8902 floodlights were substituted by Stonco without charge to C.J.

*October 16, 1972:* Capitol filed its complaint, fixing June 30, 1972, as the last day on which it supplied material to C.J. in prosecution of the government contract, and alleging that ninety days had passed without payment.

*February 28, 1975:* The district court, reversing the magistrate, found that August 11, 1972, was in fact "the day on which the last of the . . . material was furnished" under the Act, and that the complaint was therefore premature.

In settling on the August date as the date from which the ninety-day period began to run, the district court took the view that conformity to the government contract, rather than to whatever contract existed between Capitol and C.J., determined whether the delivered goods were material furnished under the Act. Whether Capitol had fulfilled its obligations to C.J. by the earlier delivery of nonconforming floodlights was, in the court's view, simply irrelevant. Thus, at the hearing on the magistrate's report, the court refused to consider whether the fixtures Capitol had initially supplied had conformed to C.J.'s order, since "the delivery of the substituted goods, whatever the situation was as between [Capitol and C.J.] in the form of the order[,] was in compliance with the contract within the meaning of the Miller Act." It followed, as the court found, "that the delivery of August 11, 1972 was the first delivery of the material required by the contract 'in respect of which a payment bond is furnished' within the meaning of Section 270b(a) . . . ."

■ We are not certain that the court's exclusive concern with the terms of the government contract was correct. A central purpose of the Miller Act is to provide a means of securing private obligations relating to construction of public facilities. As the Supreme Court recently observed,

"Ordinarily, a supplier of labor and materials on a private construction project can secure a mechanic's lien against the improved property under state law. But a lien cannot attach to Government property, *see Illinois Surety Co. v. John Davis Co.*, 244 U.S. 376, 380, 37 S.Ct. 614, 61 L.Ed. 1206 (1917), so suppliers on Government projects are deprived of their usual security interest. The Miller Act was intended to provide an alternative remedy to protect the rights of these suppliers."

*F. D. Rich Co. v. Industrial Lumber Co.*, 417 U.S. 116, 122, 94 S.Ct. 2157, 2161, 40 L.Ed.2d 703, 709 (1974). Whatever the outer limits of Miller Act protection, *see id.*, the security of the bond has always been considered available to "persons supplying labor or materials directly to the [government] contractor, for which he would be personally liable." *United States ex rel. Hill v. American Surety Co.*, 200 U.S. 197, 203, 26 S.Ct. 168, 170, 50 L.Ed. 437, 440 (1906) (construing the Heard Act). To be sure, materials must be supplied "in the prosecution of the work provided for in" the government contract, but it has been held that "it is not required of the materialman that he prove that his materials were *actually used* in the prosecution of the work of the prime contract, but

only that in good faith he reasonably believed the materials were so intended." *United States ex rel. Westinghouse Electric Supply Co. v. Endebrock-White Co.*, 275 F.2d 57, 60 (4th Cir. 1960); *accord, United States ex rel. Carlson v. Continental Casualty Co.*, 414 F.2d 431 (5th Cir. 1969). It is not inconceivable, as a corollary to this, that a supplier who furnished goods which conformed to a careless order by a prime contractor but which varied from government specifications might in at least some circumstances be entitled to recover on the bond even if the goods specified by the government were never substituted. It might follow that the ninety-day period would begin to run on the day of the supplier's last delivery in instances in which conforming goods were subsequently substituted without the supplier's knowledge.

■ Be that as it may, we cannot tell on the present record, which leaves Capitol's understanding with C.J. unclear, whether Capitol had fully performed its obligations to C.J. more than ninety days before it filed its complaint. Because of its view of the case the district court found it unnecessary to pass on this and associated matters; and while the magistrate found that the last delivery was made on June 30, 1972, as Capitol alleged, the court did not accept that finding, and we cannot say, on the basis of the record before us, that the court erred in so doing. We shall proceed, therefore, on the assumption, which may or may not be so, that suit was commenced prematurely, viz., before ninety days had elapsed after the relevant material was furnished. Even so, we think Capitol should not be barred from relief under the Act.[3]

In *Security Insurance Co. v. United States ex rel. Haydis*, 338 F.2d 444 (9th Cir. 1964), the ninth circuit considered a similar question. There too the use plaintiff filed its complaint within ninety days and discovered the problem after one year. The district court allowed the plaintiff to file a supplemental pleading alleging that more than ninety days had elapsed without payment since the last delivery, and entered judgment against the surety. The ninth circuit affirmed, finding the district court's approach consistent with both the Miller Act and the Federal Rules of Civil Procedure. The court observed that the Miller Act waiting period, in contrast to the six-month period in the Miller Act's predecessor, *see United States ex rel. Texas Portland Cement Co. v. McCord*, 233 U.S. 157, 34 S.Ct. 550, 58 L.Ed. 893 (1914), was not designed to protect any competing rights of the United States or other creditors, and should not be viewed as a "condition to the maintenance of the action." In the court's view the ninety-days to one-year period for filing was more like a limitations period, into which a complaint could be brought by supplemental pleading as long as the suit had been pending before the district court within the proper time limits. Under the Federal Rules,

> "regardless of whether the supplement to the complaint filed in the present action be considered an amendment to the complaint or a supplemental complaint, we think that the doctrine of relation back can properly be applied to prevent the one-year provision . . . from barring the action, but that we are not required to apply the doctrine of relation back so literally as to carry it to a time within the ninety-day period . . . so as to prevent the maintenance of the action in the first place."

*Id.* at 449; *see, Aetna Casualty & Surety Co. v. Circle Equipment Co.*, 126 U.S.App.D.C. 275, 377 F.2d 160 (1967); Fed.R.Civ.P. 15; *cf. United States v. Russell*, 241 F.2d 879 (1st Cir. 1957).

---

**3.** The district court's assumption that Capitol could not recover as a matter of law if it sued before the end of the ninety-day period is perfectly understandable given the apparent failure of Capitol to call to its attention the case upon which we now principally rely. *Security Insurance Co. v. United States ex rel. Haydis*, 338 F.2d 444 (9th Cir. 1964). We think, however, given the multiplicity of issues and general disarray of the case as presented to the district court, that justice requires us to deal with the issue definitively on appeal notwithstanding our normal reluctance to consider theories not called to the district court's attention. *See, e. g., Roto-Lith, Ltd. v. F. P. Bartlett & Co.*, 297 F.2d 497, 500 (1st Cir. 1962).

We think that the court's approach in *Haydis* was sound. Indeed, the argument for allowing a corrective pleading seems greater here, where the date of the last delivery was a matter of legitimate doubt, with the supplier prevailing on that issue before a magistrate sitting as a special master. In these circumstances, we can see no prejudice to Travelers that would justify, nor any purpose of either the Miller Act or the Federal Rules that would be served by denying relief to Capitol solely because its action was premature. To be sure, no supplemental pleading has yet been offered to or permitted by the district court, as in *Haydis*, but we think justice requires that the appropriate pleading be allowed on remand. We leave it to the district court to consider Travelers' cross-claim for indemnification.

*Vacated and remanded for further proceedings consistent with this opinion.*