McNAIR BUILDERS, INC., Appellant,

v.

1629 16TH STREET, L.L.C., Appellee.

No. 07–CV–1307.

District of Columbia Court of Appeals.

Argued Feb. 19, 2009.

Decided April 2, 2009.

John P. Coyle, Washington, with whom Abigail C. Briggerman was on the brief, for appellant.

Johnny R. Galloway, for appellee.

Before RUIZ and GLICKMAN, Associate Judges, and FARRELL, Senior Judge.

FARRELL, Senior Judge:

The District of Columbia's mechanic's lien statute "has been traditionally construed narrowly," *Aetna Cas. & Sur. Co. v. Circle Equip. Co.*, 126 U.S.App.D.C. 275, 280 n. 6, 377 F.2d 160, 165 n. 6 (1967), in keeping with the fact that the remedy it creates is "solely a creation of statute." *Moore v. Axelrod,* 443 A.2d 40, 43 (D.C. 1982). In this action seeking to enforce a mechanic's lien, the trial court granted partial summary judgment to appellee— effectively cancelling appellant's mechanic's lien—because appellant had not complied with the statutory requirement, D.C.Code § 40–301.02(b)(2) (2008 Supp.), to name in the lien notice the owner of the property subject to the lien. We likewise conclude that the notice was defective partly in naming the wrong owner and partly in misdescribing the property to which the lien related, and that summary judgment was therefore proper.

## I.

Pursuant to a 2003 contract, appellant (hereafter "McNair") performed construction work on a building or buildings located at 1629 16th Street, N.W., then wholly owned by appellee, 1629 16th Street, L.L.C. (hereafter "1629 L.L.C."). After a dispute arose between the parties over McNair's performance and 1629 L.L.C.'s obligation to pay, McNair filed a notice of intent with the Office of the Recorder of Deeds on January 16, 2006, "to hold a Mechanic's Lien against the interest of the current owner ... [of the] property located at 1629 16th Street, N.W...., Square ... 0193[,] ... Lot(s) 0152, 2075, [and] 2077." The notice named the owner of the property as "1629 16th Street, L.L.C."

In the meantime, however, by a Declaration dated April 7, 2005, 1629 L.L.C. had submitted the land and improvements "located on Lot 152 in Square 193 ... to the provisions of" the District's Condominium Act of 1976 (as amended in 1992), establishing "a plan of condominium ownership of the [p]roperty." Specifically, the plan created five residential units plus two parking units and common elements. Once the plan was approved, the subdivided lots acquired the numbers 2072 through 2078 in the District's land records. Thus, for example, unit number 4 and parking unit number 1 in the condominium declaration became "Lots 2075 and 2077, respectively," in Square 193. On October 4, 2005, 1629 L.L.C. sold Lots 2075 and 2077 to Robert M. Taylor, its Managing Member. The remaining Lots, with one exception, had apparently also been conveyed to individual owners by the time McNair filed its mechanic's lien notice in January 2006. The exception was Lot 2076, which 1629 L.L.C. had originally reserved as "convertible space" but then converted to a residential unit by amending the condominium

declaration, though retaining ownership of it.

Following the dispute mentioned above, McNair filed its mechanic's lien and, in April 2006, a complaint to enforce the lien, as well as for breach of contract and damages in *quantum meruit.* Simultaneously, McNair filed a notice of pendency of action (*lis pendens* ). *See* D.C.Code § 42–1207 (2001). On 1629 L.L.C.'s subsequent motion for partial summary judgment, the trial court ruled that the mechanic's lien was invalid for failure to name the correct owner of the subject property. Focusing primarily on Robert M. Taylor's ownership of Lots 2075 and 2077, the judge concluded that "there is no material factual dispute as to the contents of the lien and who the record owner was at the time the lien was filed": it was Taylor, not 1629 L.L.C. The court later "set[ ] aside the *lis pendens* " because of invalidity of the lien to which it related. *See* D.C.Code § 42–1207(d).

## II.

McNair appeals from the order cancelling the *lis pendens. See McAteer v. Lauterbach,* 908 A.2d 1168, 1169 (D.C.2006) (order expunging a *lis pendens* is appealable under the collateral order doctrine). The bulk of its argument assails the court's refusal to enforce the underlying mechanic's lien, but preliminarily it challenges cancellation of the *lis pendens* as premature. We address these arguments in order.

## A.

McNair first contends that the trial court erroneously cancelled the *lis pendens* based on its grant of summary judg-

ment respecting the mechanic's lien, because that judgment "remains subject to revision" so long as McNair's companion allegations of breach of contract and *quantum meruit* have not been resolved (Br. for McNair at 9). (Those claims were referred to arbitration by agreement of the parties, and had not been finally resolved at the time of oral argument in this appeal.) D.C.Code § 42–1207(d) provides that a *lis pendens* shall be cancelled "[i]f judgment is rendered in the action ... against the party who filed the notice," and, in McNair's view this means "judgment" as to all counts of the underlying complaint before a *lis pendens* can be nullified. Given the nature of the companion counts here, however, we do not agree.

The purpose of a *lis pendens* is "to enable interested third parties to discover the existence and scope of pending litigation affecting property." *Heck v. Adamson,* 941 A.2d 1028, 1029 (D.C.2008) (quoting *1st Atlantic Guaranty Corp. v. Tillerson,* 916 A.2d 153, 157 (D.C.2007)). For a *lis pendens* to operate, there must be a pending case "affecting the title to or asserting a mortgage, lien, security interest, or other interest in real property situated in the District of Columbia." Section 42–1207(a). Other matters, though at first appearing to involve real property, do not support the filing of a *lis pendens* "because no specific property is designated for relief in the judgment or decree." 14 POWELL ON REAL PROPERTY § 82A.02[4][b], at 82A–18 (2008) (citing cases). Among those matters are "[a]ctions to recover a debt ... and other forms of litigation merely seeking a recovery of money damages." *Id.* at 82A–17.[1] Here, the trial court granted

---

**1.** The legislative history of the District's *lis pendens* statute is in accord, declaring that a purpose of the law is to "requir[e] that notice of litigation concerning real estate be filed with the Recorder of Deeds, thus providing persons with notice of litigation that could affect good title to real estate." REPORT OF THE COUNCIL OF THE DISTRICT OF COLUMBIA COMMITTEE ON THE JUDICIARY, ON BILL 13–267, THE "FAIRNESS IN REAL ESTATE TRANSACTIONS AND RETIREMENT

summary judgment to 1629 L.L.C after concluding that the notice of mechanic's lien was invalid. In the two remaining counts of the complaint—for breach of contract and *quantum meruit*—McNair sought only monetary damages. Once the court declined to enforce the lien, therefore, no action affecting an interest in real property was still pending,[2] and cancellation of the *lis pendens* was necessary *provided that* the court's decision regarding the mechanic's lien was correct. Accordingly, we turn to McNair's arguments challenging the grant of summary judgment.

## B.

■ Under D.C.Code § 40–301.02(a)(1) (2008 Supp.), "[a] contractor desiring to enforce [a mechanic's] lien shall record in the land records a notice of intent" to do so. Subsection (b) sets forth the information that the notice must contain, preceded by the warning (in subsection (a)(1)) that "[a] notice of intent that does not comply with subsection (b) . . . shall be void." Included in the necessary information is "[t]he name and address of the owner or the owner's registered agent," subsection (b)(2), and "[a] legal description . . . of the real property." Subsection (b)(6); *see also* subsection (a)(1) (notice must "identif[y] the property subject to the lien").[3] Even before the legislature underscored the

point expressly (a non-complying notice "shall be void"), it had been "well settled that a compliance with the statutory requirements is necessary in order to secure a valid and enforceable lien." *Fidelity Storage Corp. v. Trussed Concrete Steel Co.*, 35 App. D.C. 1, 7 (1910); *see also id.* at 5 ("[I]t is essential, in order to acquire a valid lien, that there should be compliance with all the material requirements of the statute."). Consequently, "where a lienor has named as the alleged owner one who has no interest in the property or the lienor has named the wrong person as purported owner the notice is fatally insufficient." *Hartford Accident & Indem. Co. v. A.B.C. Cleaning Contractors, Inc.*, 121 U.S.App. D.C. 300, 303, 350 F.2d 430, 433 (1965).

■ Illustrating the point that courts may not "excuse those who claim [the mechanic's lien statute's] protection from the performance of precedent conditions," *Lambie Co. v. Bigelow*, 34 App.D.C. 49, 55 (1909), is *Chamberlin Metal Weather Strip Co. v. Karrick*, 60 App. D.C. 316, 53 F.2d 928 (1931). There, one John McInerney sold an apartment building to Frederick Reider, who in turn contracted with Chamberlin to install weather stripping. After Reider defaulted on his mortgage and ownership of the property reverted to

FUNDS PROTECTION ACT OF 1999," at 1–2 (Dec. 21, 1999).

2. In a separate suit for slander of title filed by 1629 L.L.C., McNair has pending a counterclaim alleging fraudulent conveyance of Lots 2075 and 2077 by 1629 L.L.C. to Robert M. Taylor. The *lis pendens* at issue, however, was not filed in regard to that claim.

3. Among other things, § 40–301.02 requires the notice to include:
   (1) The name and address of the contractor or the contractor's registered agent;
   (2) The name and address of the owner or the owner's registered agent;

(3) The name of the party against whose interest a lien is claimed and the amount claimed, less any credit for payments received up to and including the date of the notice of intent;
(4) A description of the work done, including the dates that work was commenced and completed;
(5) A description of the material furnished, including the dates that material was first and last delivered;
(6) A legal description and, to the extent available, a street address of the real property. . . .

McInerney, Chamberlin filed a notice of mechanic's lien against the property naming Reider as the owner. Later, McInerney sold the property to new owners. The trial court dismissed the complaint to enforce the mechanic's lien on the ground that the owner of the property had not been named. The Circuit Court affirmed, explaining that "the conclusion is inescapable that all persons concerned or interested in the estate are to be at least constructively notified of the interest in the property and the name against which the lien is claimed." *Id.* at 317–18, 53 F.2d at 929–30. Because Chamberlin had incorrectly named the property owners, McInerney had no notice of the lien, and if the new owners had conducted a title search, they would not have learned that a mechanic's lien had been filed. Thus, "the notice as filed was notice to no one." *Id.* at 318, 53 F.2d at 930.

■ McNair does not dispute that at the time it filed the mechanic's lien naming 1629 L.L.C. as owner of Lots 2075 and 2077, the record owner of those lots was Robert M. Taylor. *But see* note 2, *supra.* McNair argues, first, however, that it also named Lot 152 as part of the affected property and thus there is "a genuine issue of material fact concerning whether McNair's notice of intent adequately identified 1629 [L.L.C.] as an owner of Square 193, Lot 152 in order to preserve McNair's mechanic's lien" (Br. for McNair at 15). McNair means here specifically the portion of the property denominated "convertible space" in the condominium declarations, which 1629 L.L.C. still owned at the time the mechanic's lien was filed.

"Lot 152," however, did not correctly describe the "convertible space" 1629 L.L.C. continued to own. That part of the property was renumbered Lot 2076 in the formation of the condominium regime, whereas Lot 152 described the entire property subdivided in the condominium conversion. New York Courts, applying a mechanic's lien statute not unlike ours, have consistently held that a lien notice "filed after the recording of a condominium declaration on the subject building ... is invalid ... as against specific condominium units ... [if it] set[s] forth the former superseded single lot number for the entire building rather than the separate lot numbers assigned to each unit in connection with the conversion ... [and thus] fails to properly describe the specific units ... sought to [be] encumber[ed]." *Northeast Restoration Corp. v. K & J Constr. Co.,* 757 N.Y.S.2d 542, 543 (App.Div.2003). *See also Atlas Tile and Marble Works, Inc. v. S & H 88th St. Assoc.,* 191 A.D.2d 247, 595 N.Y.S.2d 10 (1993); *Westage Towers Assocs. v. ABM Air Conditioning and Refrigeration, Inc.,* 187 A.D.2d 600, 590 N.Y.S.2d 118 (1992) ("The description of the property in the notice of lien created a 'blanket lien' ... not valid as against the individual units, including the unsold units retained by the [developer], or the common elements of the condominium."). Our own statutory condominium scheme stresses the importance of individual unit description by providing, for example, that "[a]fter the creation of the condominium, no description of a condominium unit shall be deemed vague, uncertain, or otherwise insufficient ... which sets forth the identifying number of that unit [and other information]." D.C.Code § 42–1902.03 (2001); *id.* § 42–1901.04 ("A condominium unit shall be carried on the records of the District of Columbia and assessed as a separate and distinct taxable entity").

McNair had partial actual notice, at least, of the individual unit numbers because it identified two of them in the lien notice: Lots 2075 and 2077. More importantly, a diligent title search would have informed McNair of the Lot number as-

signed to the "convertible space" before it filed the notice of lien. *See Northeast Restoration Corp.,* 757 N.Y.S.2d at 543 (excusal of misdescription "is not warranted merely because the lien's misidentification of the lot numbers and owners was the result of plaintiff's apparently inadvertent failure to make a thorough search of the relevant public records"). The misnaming of the property segment still owned by 1629 L.L.C. thus left open the possibility that a subsequent buyer searching title would not learn of the lien. That is not the compliance required by a statute, § 40–301.02(a)(1), that makes a notice not conforming to its core terms a nullity.

McNair's remaining argument is directed to its conceded failure to name the record owner of Lots 2075 and 2077 in the lien notice. It argues that there were triable issues of fact about whether the sale of the lots to Taylor was an "arm's-length transaction" if, as McNair asserted, the transfer price on the face of 1629 L.L.C.'s deed conveying the lots was $287,000, "while Taylor had contemporaneously advertised [the u]nit ... for sale at a price of $2.3 million" (Br. for McNair at 16). In McNair's view, a determination that the conveyance was "voidable" because calculated to defeat creditors' rights would mean that ownership never effectively left 1629 L.L.C., the owner it named in the lien notice.

We are not persuaded. McNair cites the "rule" discussed (but not relied on) in *Maiatico v. Fletcher,* 59 App. D.C. 250, 39 F.2d 295 (1930), that "if a creditor has a lien on property, his enforcement of that lien cannot be rendered inadequate by a fraudulent conveyance ... of the property,

and he may maintain a suit in equity to set aside the conveyance." *Id.* at 251, 39 F.2d at 296. But, as the court there stated, "[t]hat rule ... is applicable where the lien, by virtue of the fraud committed, would be destroyed." *Id.* The sale to Taylor could not have "destroyed" a lien McNair had not yet perfected by recording, *see Fidelity Storage Corp.,* 35 App. D.C. at 13 ("The performance of the work, or the furnishing of the materials, gives merely a right to acquire a lien. The statute prescribes the necessary steps to perfect it."), without proof—or even an allegation—that 1629 L.L.C. concealed the transfer to Taylor from McNair and thus impaired its ability to give proper notice. Moreover, a lien statute providing that a notice that does not comply with its requirements is "void," § 40–301.02(a)(1), leaves little room to argue that a conveyance that may be disregarded for other purposes excuses failure to name the record owner.[4] McNair's counterclaim in the related suit for fraudulent conveyance neither affects, nor is affected by, his failure to file correct notice of the mechanic's lien, resulting in an invalid lien.

*Affirmed.*

---

4. McNair's reliance on *Davidson v. E.F. Brooks Co.,* 46 App.D.C. 457 (1917), is also misplaced. Its holding (in McNair's words (Br. at 4)) that changes in the title to land made for the convenience of its owners cannot defeat the legitimate rights of lien credi-tors begs the question of how a "valid lien" is established, *Fidelity Storage Corp.,* 35 App. D.C. at 5, and whether a lien void for noncompliance with statutory requirements may yet be asserted against the rights of others—a question we here answer in the negative.