*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters.  Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 22-CV-0749

DONNA M. GERACI, *et al.*, APPELLANTS,

V.

IAN HAMILTON, *et al*., APPELLEES.

Appeal from the Superior Court
of the District of Columbia
(2020-CA-001915-M)

(Hon. Yvonne Williams, Trial Judge)

(Argued October 12, 2023                    Decided February 5, 2026)

*Matthew W. Lee*, with whom *Dov M. Szego* was on the brief, for appellants.

*Christopher J. Gowen* for appellees.

Before BECKWITH and EASTERLY, *Associate Judges*, and RUIZ,[*] *Senior Judge*.

RUIZ, *Senior Judge*: In the District of Columbia, mandatory reporters of suspected child abuse have statutory "immunity from liability, civil or criminal,"

---

[*] Associate Judge AliKhan was originally assigned to this case.  Following Judge AliKhan's appointment to the United States District Court for the District of Columbia, effective December 12, 2023, Senior Judge Ruiz has been assigned to take her place on the panel.

D.C. Code § 4-1321.04, when making a report in good faith of suspected child abuse pursuant to the mandatory reporting provisions of D.C. Code §§ 4-1321.01 to -1321.08. Before us is an interlocutory appeal from the Superior Court's denial of a summary judgment motion, in which a mandatory reporter sought dismissal of a claim on summary judgment on the basis of her immunity under the statute. This appeal presents two questions of first impression about that immunity: (1) whether this court has jurisdiction to review the Superior Court's denial of the statutory immunity on an interlocutory basis under the collateral order doctrine; and (2) if so, the legal standard for rebutting the statutory presumption of good faith (and whether the evidence presented was sufficient to withstand summary judgment). Without minimizing the importance of the immunity provision, we conclude that because the statute confers immunity from liability, as distinct from immunity from suit, denial of the statutory immunity does not satisfy the "effectively unreviewable on appeal" prerequisite for interlocutory appellate review under the collateral order doctrine. As we must dismiss the appeal for lack of jurisdiction, we do not address appellants' claim of immunity on the merits, and we remand the case with instructions that the trial court continue with the proceedings.

## I. Background

### A. The Mandatory Reporting Statute

Congress first enacted a mandatory reporting statute for the District of Columbia in 1966, Pub. L. No. 89-775, 80 Stat. 1354 (1966), and the D.C. Council amended it with the Prevention of Child Abuse and Neglect Act of 1977, D.C. Law 2-22, 24 D.C. Reg. 3341 (1977).[1] Pursuant to D.C. Code § 4-1321.02, certain professionals designated as "mandatory reporters" are required to make a report to the Child and Family Services Agency (CFSA) or to the Metropolitan Police Department "if they know or have reasonable cause to believe" that a child they know in their professional capacity has been or is in immediate danger of being, among other things, the victim of sexual abuse. D.C. Code § 4-1321.02(b)(1)(C).

The purpose of the statute is, inter alia, "to require a report of a suspected neglected child in order to identify neglected children." D.C. Code § 4-1321.01.

---

[1] All fifty states have some version of a mandatory reporting statute, enacted during the 1960s as part of a national movement towards protecting children. *State v. Strauch*, 345 P.3d 317, 322 (N.M. 2015) (reviewing secondary sources). This movement was spurred by a report issued in 1963 by the federal Children's Bureau, which appended a model statute providing for mandatory reporting and immunity from liability. CHILDREN'S BUREAU, U.S. DEP'T OF HEALTH, EDUC., AND WELFARE, THE ABUSED CHILD—PRINCIPLES AND SUGGESTED LANGUAGE FOR LEGISLATION ON REPORTING OF THE PHYSICALLY ABUSED CHILD (1963). Congress later passed the Child Abuse Prevention and Treatment Act in 1974, requiring mandatory reporting laws as a condition for receiving certain federal grants. 42 U.S.C.A. § 5106a(b)(2)(B).

Consistent with this stated purpose, it incentivizes reporting in two ways. On the one hand, willful failure to make such a report is criminally punishable with a fine, 180 days' imprisonment, or both. *Id.* § 4-1321.07. On the other hand, mandatory reporters are shielded from liability, both civil and criminal, for reports made in good faith, even if those reports ultimately turn out to be mistaken. *See id.* § 4-1321.04. At issue here is that immunity provision, which provides in full that:

> Any person, hospital, or institution participating in good faith in the making of a report pursuant to this subchapter shall have immunity from liability, civil or criminal, that might otherwise be incurred or imposed with respect to the making of the report. Any such participation shall have the same immunity with respect to participation in any judicial proceeding involving the report. In all civil or criminal proceedings concerning the child or resulting from the report good faith shall be presumed unless rebutted.

*Id.* The text of the current immunity provision is essentially identical to the language enacted by Congress in 1966, *see* Pub. L. 89-775, § 4, 80 Stat. 1354, 1354 (1966), except that the presumption of good faith was added to the final sentence by the D.C. Council in 1977. Prevention of Child Abuse and Neglect Act, D.C. Law 2-22, § 1-103(e), 24 D.C. Reg. 3341 (1977).[2]

---

[2] The D.C. Council has also enacted a separate statute providing that "[a]ny person who knows, or has reasonable cause to believe, that a child is a victim of sexual abuse shall immediately report such knowledge or belief to the police" or to the CFSA. D.C. Code § 22-3020.52(a). This provision does not alter the special

Two key aspects of the immunity provision bear highlighting for purposes of this case. First, and most importantly, the immunity conferred is "immunity from liability, civil or criminal." D.C. Code § 4-1321.04. Second, the statute establishes a presumption (albeit a rebuttable one) that reports of suspected abuse are made in good faith. *See id.*

## B. Factual and Procedural Background

Appellee, Ian Hamilton, filed this action, on his own behalf and on behalf of his minor child, S.Z.H., against appellants Donna M. Geraci and Creative Ways Therapy alleging (among other things) professional malpractice and intentional infliction of emotional distress. Ms. Geraci is a licensed clinical social worker at Creative Ways Therapy and a mandatory reporter under D.C. Code § 4-1321.02(a)(17). When S.Z.H. was three years old and a patient at Creative Ways, Ms. Geraci made a report to CFSA regarding possible sexual abuse of S.Z.H. by Mr. Hamilton. For purposes of this appeal, we presume, as the trial court appeared

---

duty to report imposed on mandatory reporters, *id.* § 22-3020.52(d) and carries a civil instead of criminal penalty. *Id.* § 22-3020.54(a). It also includes a substantially similar immunity provision. *See id.* § 22-3020.55(a). Although, both immunity provisions arguably apply to the report at issue in this case, appellants have relied only on D.C. Code § 4-1321.04, and we, therefore, confine our analysis to that provision.

to, that at least a portion of Mr. Hamilton's and S.Z.H.'s claims arise from that report and from Ms. Geraci's subsequent testimony in related proceedings.

Appellants moved for summary judgment, invoking, inter alia, the statutory immunity for mandatory reporters, D.C. Code § 4-1321.04, and arguing that there was no genuine dispute of fact sufficient to rebut the presumption that Ms. Geraci's report was made in good faith. The trial court denied the summary judgment motion in part.[3] As relevant here, it declined to grant summary judgment on the immunity claim, reasoning there was evidence that "Ms. Geraci's actions leading up to her report were driven by bias, personal malice, or ill will"[4] and that "a jury must decide whether [the] report was made in good faith and whether statutory immunity applies." Appellants now bring this interlocutory appeal challenging the trial court's ruling on the immunity question.

---

[3] The trial court granted summary judgment to the appellants on Counts II (negligent retention, training, and supervision) and V (wrongful involvement in litigation) but denied summary judgment on Counts I (professional negligence), III (intentional infliction of emotional distress), and IV (negligent infliction of emotional distress).

[4] We express no view on the trial court's articulation of the standard for good faith under the statute.

## II.    Jurisdiction

Since the denial of a motion for summary judgment is an interlocutory order that is not specifically made appealable by statute, *see* D.C. Code § 11-721(a)(2), we have jurisdiction to hear this appeal only if the requirements of the collateral order doctrine are met. One of those requirements is that the order be effectively unreviewable on appeal. As we explain below, immunity from liability is not effectively unreviewable on appeal, and as a matter of statutory construction, we conclude immunity from liability is the only immunity the statute confers. We thus lack jurisdiction and dismiss the appeal.

### A. The Final Judgment Rule and the Collateral Order Doctrine

In general, this court's jurisdiction to hear appeals from the Superior Court is limited to final orders and judgments and certain, specified interlocutory orders not relevant here. D.C. Code § 11-721(a).[5] "A final order is one 'that resolves the case on its merits' and leaves nothing for the court to do but 'execute the judgment.'"

---

[5] There is also a limited statutory exception in civil cases providing that when a Superior Court judge "shall be of the opinion that the ruling or order involves a controlling question of law as to which there is substantial ground for a difference of opinion and that an immediate appeal from the ruling or order may materially advance the ultimate termination of the litigation or case, the judge shall so state in writing in the ruling or order." D.C. Code § 11-721(d). This court then has discretion whether to permit an interlocutory appeal from that order if an application is made. *Id.*

*Wash. Metro. Area Transit Auth. v. Nash-Flegler*, 272 A.3d 1171, 1177 (D.C. 2022) (quoting *McNair Builders, Inc. v. Taylor*, 3 A.3d 1132, 1135 (D.C. 2010)). "A denial of a motion for summary judgment" generally "is not a final order because it contemplates a continuation of proceedings." *Id.* However, under the collateral order doctrine, such an order is immediately appealable if it satisfies "three requirements: '(1) it must conclusively determine a disputed question of law, (2) it must resolve an important issue that is separate from the merits of the case, and (3) it must be effectively unreviewable on appeal from a final judgment.'" *Id.* (quoting *McNair Builders*, 3 A.3d at 1135).

Our jurisdiction under the collateral order doctrine is equivalent to that of federal appellate courts, and we follow the Supreme Court's "evolving standards with respect to its proper application." *McNair Builders*, 3 A.3d at 1142. The Supreme Court has cautioned that the collateral order doctrine is a narrow exception that should "never be allowed to swallow the general rule, that a party is entitled to a single appeal, to be deferred until final judgment has been entered, in which claims of [trial] court error at any stage of the litigation may be ventilated." *Digit. Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 868 (1994) (citations omitted). Appealability under the collateral order doctrine "is to be determined for the entire category to which a claim belongs, without regard to the chance that the litigation at

hand might be speeded, or a 'particular injustic[e]' averted, by a prompt appellate court decision." *Id.* at 868 (alteration in original) (quoting *Van Cauwenberghe v. Biard*, 486 U.S. 517, 529 (1988)).

Here, the parties dispute all three prerequisites for collateral order jurisdiction. Since our disposition of this appeal turns on the third prong, whether the order is effectively unreviewable on appeal, we assume without deciding that the first two prerequisites are satisfied. We conclude that statutory immunity is effectively reviewable on a post-judgment appeal because what the statute provides is immunity from liability, not immunity from suit.

## B. Immunity and the Collateral Order Doctrine

Denial of immunity from suit has been held to satisfy the collateral order doctrine, because such immunity confers a right not just to be free from liability, but a right not to be tried altogether. *See McNair Builders*, 3 A.3d at 1137-38; *see also District of Columbia v. Pizzulli*, 917 A.2d 620, 624 (D.C. 2007) (explaining that "[a]n order denying a motion to dismiss that 'asserts an immunity from [lawsuits] is the type of ruling "commonly found to meet the requirements of the collateral order doctrine . . ."'" (quoting *Heard v. Johnson*, 810 A.2d 871, 877 (D.C. 2002))). Thus, delaying appellate review until after trial is completed would eviscerate what the immunity seeks to protect—to be free from suit.

"One must be careful, however, not to play word games with the concept of a 'right not to be tried.'" *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 801 (1989). "In one sense, any legal rule can be said to give rise to a 'right not to be tried' if failure to observe it requires the trial court to dismiss the indictment or terminate the trial." *Id.* Thus, the Supreme Court has indicated that a "right not to be tried in the sense relevant to [the collateral order doctrine] rests upon an explicit statutory or constitutional guarantee that trial will not occur." *Id.*; *see United States v. Trump*, 91 F.4th 1173, 1185 (D.C. Cir. 2024) (citing *Digit. Equip. Corp.*, 511 U.S. at 875) (noting that principle has limits when applied to well-established implied immunities that nevertheless lack an explicit textual basis, e.g., qualified immunity or presidential immunity), *vacated on other grounds*, 603 U.S. 593 (2024).

Considering the purpose of the collateral order doctrine and the nature of the interest protected by the grant of immunity from liability, we conclude that unlike immunity from suit, denial of a party's immunity from liability is not appealable on an interlocutory basis because the immunity can be adequately protected by a post-judgment appeal in which the judgment is reversed upon a showing that the imposition of liability was in error. *See McNair Builders*, 3 A.3d at 1140 (explaining that "at least part of the interest sought to be protected by the judicial proceedings privilege[—]immunity from liability—can be vindicated by a post-final order

reversal of a judgment"); *Taylor v. Cnty. of Pima*, 913 F.3d 930, 934 (9th Cir. 2019) ("[I]mmunity from liability may be vindicated fully after final judgment, so the collateral-order doctrine does not encompass an interlocutory appeal from a denial of immunity from liability."). The usual rule that appeals are from final orders therefore applies.

Immunity from suit, by contrast, is effectively lost if a trial is erroneously held, no matter the outcome, because no post-judgment appeal can undo the fact that a party was forced to stand trial. *See Nash-Flegler*, 272 A.3d at 1178 n.1 ("The trial court conclusively resolved the legal question of whether sovereign immunity protected WMATA from proceeding to trial at all. That itself is an important question."); *id.* ("Sovereign immunity, in substantial part, 'is an immunity from trial and the attendant burdens of litigation, and not just a defense to liability on the merits.'" (quoting *Rush-Presbyterian-St. Luke's Med. Ctr. v. Hellenic Republic*, 877 F.2d 574, 576 n.2 (7th Cir. 1989))).[6]

---

[6] *See also, e.g.*, *Kevin C. v. Founds. Behav. Health*, No. 21-2771, 2023 WL 3244575, at *2 (3d Cir. May 4, 2023) ("Whether denial of immunity conferred by state law is immediately appealable at the motion-to-dismiss stage under the collateral order doctrine turns on whether, under applicable state law, the immunity in question is immunity from liability or immunity from suit."); *Gen. Steel Domestic Sales, L.L.C. v. Chumley*, 840 F.3d 1178, 1179-80 (10th Cir. 2016) ("We conclude that the [Communications Decency Act] provides immunity from liability, not suit, and the district court's order does not qualify under the collateral order doctrine."); *In re World Trade Ctr. Disaster Site Litig.*, 521 F.3d 169, 181 (2d Cir. 2008)

Appellants eschew grappling with the distinction between immunity from liability and suit, instead focusing principally on their argument that protecting mandatory reporters of suspected child abuse is comparably important to other "high-order" or substantial public interests that we have held to be effectively unreviewable on appeal in the past.[7] We do not intend in any way to minimize the importance of the Prevention of Child Abuse and Neglect Act or its immunity provision. However, we reach that inquiry only if we first conclude that the immunity at issue is in fact immunity from suit. *See, e.g.*, *McNair Builders*, 3 A.3d at 1137-39 (concluding first that the judicial proceedings privilege "entails the right to be free from suit" but then concluding that it was not an interest of the "high order" necessary to satisfy the collateral order doctrine); *cf. Digit. Equip. Corp.*, 511 U.S. at 879 ("When a policy is embodied in a constitutional or statutory provision

---

(explaining that a court must determine whether "immunities are intended to be from suit, or just from liability" because "only immunities from suit are 'effectively unreviewable' on final appeal" (citation omitted)).

[7] Appellees, for their part, argue that the collateral order doctrine does not apply to immunity from liability, as distinct from immunity from suit. We agree with this conclusion, although not because we are persuaded by appellees' contention that a "collateral order doctrine analysis is not necessary" at all. Rather, as discussed in the text, statutory immunity only from liability, but not suit, is effectively reviewable on appeal and therefore fails the third prong of the collateral order doctrine test.

entitling a party to immunity from suit . . . there is little room for the judiciary to gainsay its 'importance.'").

Whether or not a particular statutory provision provides immunity from suit or immunity from liability is ultimately a question of statutory interpretation. *See In re World Trade Ctr. Disaster Site Litig.*, 521 F.3d 169, 182 (2d Cir. 2008) (explaining that "to determine whether these New York state defenses provide immunity from suit or only immunity from liability, we need only consider the statutory language, if any, of each defense" and any case law construing it). Since, for the reasons explained below, we conclude that the statute confers only immunity from liability, we have no occasion to decide whether a sufficiently high-order interest is implicated to warrant an interlocutory appeal.[8]

### C. Statutory Analysis

"Generally, '[w]e will give effect to the plain meaning of a statute when the language is unambiguous and does not produce an absurd result.'" *Booz Allen Hamilton Inc. v. D.C. Off. of Tax & Revenue*, 308 A.3d 1205, 1209 (D.C. 2024) (alteration in original) (quoting *In re Macklin*, 286 A.3d 547, 553 (D.C. 2022)). "The

---

[8] *Cf. Digit. Equip. Corp.*, 511 U.S. at 879 ("When a policy is embodied in a constitutional or statutory provision entitling a party to immunity from suit . . . there is little room for the judiciary to gainsay its 'importance.'").

plain meaning of a statute may not be controlling, however, when there is a 'clearly expressed legislative intention to the contrary.'" *Id.* (quoting *Hensley v. D.C. Dep't of Emp. Servs.*, 283 A.3d 123, 127 (D.C. 2022)).

The plain text of Section 4-1321.04 expressly provides for "immunity from liability" and nowhere refers to either immunity from suit or its criminal corollary, immunity from prosecution. *See F.A. by P.A. v. W.J.F.*, 591 A.2d 691, 694 (N.J. Super. Ct. App. Div. 1991) (explaining in the context of New Jersey's mandatory reporting statute that "[t]he immunity afforded . . . is from any 'liability, civil or criminal' that might otherwise be incurred or imposed" and holding that "[t]he statute does not afford immunity from suit"). In the absence of any evidence to the contrary, we presume that the legislature "said what it meant and meant what it said." *Sharps v. United States*, 246 A.3d 1141, 1150 (D.C. 2021). Appellants have not pointed to any countervailing evidence in the legislative history, and we have found none in our own review.[9]

---

[9] To the contrary, the legislative history from the original Congressional enactment reinforces the plain text reading. Consistent with the text of the statute, committee reports stated that the purpose of the immunity provision was to encourage reporting by shielding mandatory reporters from liability. *See, e.g.*, H.R. Rep. No. 89-744, at 3 (1965) ("We are told also that there is every reason to believe that these physicians are aware of many more cases than they report but are in fear of ensuing liability. . . . Members of the medical profession . . . favor the enactment of this bill which would allow physicians in the District of Columbia to call attention to cases of child abuse without concern about incurring potential criminal or civil

Likewise, the purpose and structure of the mandatory reporting statute do not lead to a different conclusion. It is certainly possible, as appellants suggest, that encouraging mandatory reporting would be even better served if the statute provided immunity from suit as well as liability. It does not follow, however, that we can simply read in immunity from suit, a "rare form of protection," *Digit. Equip. Corp.*, 511 U.S. at 879, to a statute passed by the legislature because we think it would be an improvement on the plain statutory text. Assuming, that appellants have ascertained the statute's overriding purpose correctly, this argument "merely begs the question of how far the D.C. Council wanted to go in enhancing" the protections for mandatory reporters. *Off. of the People's Couns. for the D.C. v. D.C. Water & Sewer Auth.*, 313 A.3d 579, 586 (D.C. 2024). As the Tenth Circuit explained in rejecting a similar argument that a statutory provision should be construed as "a bar against suit because doing so would fulfill Congress's intent[,]" "the best indicator of [legislative] intent is the statutory language." *Gen. Steel Domestic Sales, L.L.C.*

---

liability for so reporting."); S. Rep. No. 89-788, at 4 (1965) ("It would appear that more cases of child abuse would be reported to the appropriate authorities if a child-abuse bill, as that proposed in H.R. 10304, is enacted for the District of Columbia and which removes the examining or treating physician from any civil or criminal liability upon making a report."). Likewise, the 1977 Committee Report from the D.C. Council states simply that "[p]ersons or institutions making these reports in good faith will be immune from civil or criminal liability." Prevention of Child Abuse and Neglect Act, Report on Bill No. 2-48 before the Committee on Human Resources and Aging, Council of the District of Columbia, at 3 (Mar. 30, 1977).

*v. Chumley*, 840 F.3d 1178, 1182 (10th Cir. 2016). "When deciding whether a class of people qualify for immunity from suit," the court reasoned, "we look for that intent to be expressed in an explicit statutory or constitutional guarantee of immunity." *Id.*

Moreover, Congress and the D.C. Council have not created a statutory scheme that advances the goal of encouraging reporting at the expense of all other interests—for example, rather than providing unconditional immunity for all reports of suspected abuse, immunity from liability was made contingent on a rebuttable presumption of good faith. And, contrary to appellants' argument, that the statute imposes criminal liability for willful failure to report, does not counsel one way or another on the question of immunity from suit for those who do report. Absent evidence to the contrary, we must presume that the D.C. Council intended that potential criminal liability for willful failure to report, coupled with immunity from any civil or criminal liability stemming from reports made in good faith, was the appropriate balance to strike to incentivize responsible reporting under the statute. It is not for us to recalibrate that balance by reading an additional protection into the immunity provision.

We are also not persuaded by appellants' reliance on two of our collateral order doctrine precedents, *Nash-Flegler*, 272 A.3d 1171, and *Competitive Enter.*

*Inst. v. Mann*, 150 A.3d 1213 (D.C. 2016).  First, in *Nash-Flegler*, we held that denial of summary judgment on a claim of sovereign immunity by the Washington Metropolitan Area Transit Authority (WMATA) could be appealed on an interlocutory basis under the collateral order doctrine.  272 A.3d at 1176.  We explained that WMATA's immunity "is essentially a statutorily conferred and circumscribed version of Eleventh Amendment immunity that states themselves enjoy."  *Id.* at 1178.  It is settled as a matter of federal constitutional law that sovereign immunity is immunity from suit and "is effectively lost if a case is erroneously permitted to go to trial."  *Id.* (quoting *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993)).  Thus, the same was true of WMATA's immunity.  *Id.*  That conclusion, however, has little bearing on whether the statute before us confers immunity from suit to a non-sovereign entity.

Likewise, in *Mann*, we concluded that we have jurisdiction to hear an interlocutory appeal from the trial court's denial of a special motion to dismiss under the District of Columbia's Anti-Strategic Lawsuits Against Public Participation (Anti-SLAPP) Act.  150 A.3d at 1220.  In that case, however, there was overwhelming evidence from both the structure and legislative history of the Anti-SLAPP Act that it was intended to prevent certain meritless lawsuits from going to trial, particularly where the plaintiff's goal was "not to win the lawsuit but

to punish the opponent and intimidate them into silence." *Id.* at 1226 (quoting Council of the District of Columbia, Report of Committee on Public Safety and the Judiciary on Bill 18-893, at 4 (Nov. 18, 2010) (hereinafter Report on Bill 18-893)). Accordingly, the Anti-SLAPP Act created a special motion to dismiss procedure which, if successful, entitled the moving party to dismissal of the claims (or counterclaims). *See id.* at 1227 (explaining the burden-shifting framework and special motion to dismiss procedure). If a special motion to dismiss was denied, the litigation continued, making such denial a non-final order. *Id.* However, we explained in *Mann* that the Anti-SLAPP Act "provides not only immunity from having to stand trial but also protection from 'expensive and time consuming discovery that is often used in a SLAPP as a means to prevent or punish' by 'toll[ing] discovery while the special motion to dismiss is pending.'" *Id.* at 1230 (quoting Report on Bill 18-893, at 4). Thus, in the Anti-SLAPP Act the Council's clearly stated intent was to provide an expedited procedure to end lawsuits prior to full discovery and trial proceedings. Only an interlocutory appeal can safeguard the rights that are implicated in the erroneous denial of a special motion to dismiss and, therefore, is "the type of unreviewable order that falls squarely within the collateral order doctrine." *Id.*

The statute at issue here differs in several critical respects. For one, it does not create a specialized procedure akin to the Anti-SLAPP special motion to dismiss for early resolution of immunity claims—rather, avoidance of trial, on the basis of immunity, is contingent on a successful showing under, for example, Superior Court Civil Rule 12(b)(6) or Rule 56. Moreover, the legislative history does not convey, in remotely comparable terms, a clear legislative intent to prevent the burdens of discovery and trial. *See supra* note 9. And perhaps most fundamentally, the immunity provision at issue here expressly uses the phrase "immunity from liability," whereas the Anti-SLAPP Act entitles the movant to "dismissal . . . with prejudice" unless the claim "is likely to succeed on the merits." *Compare* D.C. Code § 4-1321.04 *with id.* § 16-5502(d).

Since the immunity invoked by appellants here is immunity from liability, and not immunity from suit, we conclude that it is effectively reviewable on a post-judgment appeal, and therefore we do not have jurisdiction to address this appeal on the merits under the collateral order doctrine.[10]

---

[10] We note that a statutory question of first impression of the type presented here concerning the interpretation of "good faith" reporting that triggers the statutory immunity might be suitable for the certification procedure provided in D.C. Code § 11-721(d). *See supra* note 5; *cf. Digit. Equip. Corp.*, 511 U.S. at 883 (noting that the parallel federal "discretionary appeal provision (allowing courts to consider the merits of individual claims) would seem a better vehicle for vindicating serious" questions raised by a particular case "than the blunt, categorical instrument of [a]

### III.   Conclusion

Because we conclude that we lack jurisdiction to entertain, on an interlocutory basis, a challenge to the trial court's denial of immunity from liability under D.C. Code § 4-1321.04, this appeal is dismissed and the case remanded for further proceedings.[11]

*So ordered.*

---

collateral order appeal").  No such certification was made here, however, and we therefore do not have discretion to entertain this appeal.  *See Ford v. ChartOne, Inc.*, 834 A.2d 875, 878 (D.C. 2003) ("The trial judge's certification is an indispensable precondition for this court to exercise its discretion to allow an interlocutory appeal under D.C. Code § 11-721(d).").

[11] Appellee's motion requesting a ruling on appeal is denied as moot.